**REVENUE CABINET, COMMON-WEALTH OF KENTUCKY, Appellant,**

v.

**PYRAMID MINING COMPANY; Whitaker Coal Sales, Inc.; Continental Coal Sales Corp.; and Shamrock Coal Company, Inc., Appellees.**

Court of Appeals of Kentucky.

Aug. 28, 1987.

Rehearing Denied Oct. 10, 1987.

Discretionary Review Denied by the Supreme Court Jan. 12, 1988.

her to California until a hearing on permanent custody could be·held.

John C. Tobin, Revenue Cabinet, Frankfort, for appellant.

Jackson W. White, Lexington, Neville Smith, Manchester, for appellees.

Before CLAYTON, McDONALD and MILLER, JJ.

MILLER, Judge.

The Revenue Cabinet, Commonwealth of Kentucky (cabinet), brings this appeal from a judgment of the Franklin Circuit Court upholding a decision of the Kentucky Board of Tax Appeals (KBTA). KRS 131.-310. We affirm.

Kentucky's severance tax (KRS Chapter 143) imposes a tax of 4.50% upon the "gross value" of coal severed and/or processed. The tax is imposed by KRS 143.-020 which provides, in part, as follows:

143.020. IMPOSITION OF TAX ON SEVERANCE OR PROCESSING OF COAL.—For the privilege of severing or processing coal, in addition to all other taxes imposed by law, a tax is hereby levied on every taxpayer engaged in severing and/or processing coal within this Commonwealth at the rate of four and one-half percent (4.50%) of the *gross value* of all coal severed and/or processed during the reporting period; .... (emphasis added)

In determining "gross value," we use the federal valuation methods used for deple-

tion purposes, with the exception that "transportation expense" is not included.[1] Thus, in arriving at the taxable base (gross value) for imposition of the 4.50% tax rate under KRS 143.020, we determine gross value (synonymous with gross income) and deduct transportation expense. Gross value is defined in KRS 143.010(6), in relevant part as follows:

(6) "Gross value" is synonymous with gross income from property as defined in section 613(c) of the Internal Revenue Code and regulations 1.613–3 and 1.613–4 in effect on December 31, 1977, *with the exception that in all instances transportation expense (whether or not by common carrier) incurred in transporting coal shall not be considered as gross income from the property.* .... (emphasis added)

Transportation expense is defined in KRS 143.010(11) which provides as follows:

(11) Transportation expense shall mean: (a) The amount paid by a taxpayer to a third party for transporting coal from the mine mouth or pit to a processing plant, tipple, loading dock or customer provided that the transaction is at arm's length.

(b) The cost incurred by a taxpayer using his own facilities in transporting coal from the mine mouth or pit to a processing plant, tipple, loading dock, or customer.

(c) The cost incurred in transporting the coal for purpose of marketing.

(d) In no case shall transportation expenses include the cost of acquisition, improvements, or maintenance of real property; the cost of loading or unloading facilities.

The cabinet issued deficiency assessments against each appellee after audit disallowed certain transportation expenses in the severance and processing of coal.[2] It is the cabinet's position that excessive trans-

---

1. For reasons not here relevant, federal valuation of coal for depletion purposes *includes* "transportation of ores or minerals (whether or not by common carrier) from the point of extraction from the ground to the plants or mills in which such treatment processes are applied thereto ..." 26 U.S.C. § 613.

2. Shamrock and Pyramid are engaged in both severing and processing of coal while Whitaker and Continental are engaged only in processing.

portation expense was claimed by each taxpayer in arriving at the gross value subject to the tax rate. The cabinet construes Sections .010(6) and (11) as contemplating and permitting deduction for the cost of moving coal from the mouth of the mine or strip pit (as the case may be) to either (1) the processing plant, (2) the tipple, (3) the loading dock or (4) the customer. All other movement during the processing of coal, says the cabinet, is nondeductible in arriving at the base for taxation.

Here we look at the definition of "processing," as defined in KRS 143.010(8):

"Processing" includes cleaning, breaking, sizing, dust allaying, treating to prevent freezing, or loading for shipment. . . .

The foregoing definition coupled with a practicable understanding of the coal business leads to the obvious conclusion that depending upon the nature of the enterprise, especially the facility's physical layout, there is necessitated much movement (transportation) of coal within the processing operation—beyond the movement contemplated by the cabinet in the four categories set forth above. It is the expenses related to this movement that the cabinet maintains are not excludable in arriving at the gross value to be taxed. The cabinet argues the cost of movement within the processing operations is not transportation expense as contemplated in KRS 143.010(6), but rather an integral part of the expense incurred in processing, and therefore not excludable. On the other hand, the taxpayers argue, and we agree—as did the KBTA and circuit court, that Section .010(11) is all inclusive in defining transportation costs to be excluded under Section .010(6). That is to say that when read as a whole, the statute dictates that the cost involved in any movement (transportation) of coal from its source to the customer is excludable. It is our view that the legislature's inclusion of .010(11)(c) expands the term "transportation expense" beyond the definition of "transportation" used in Section 613(c) of the Internal Revenue Code. Were it not intended to so expand the transportation costs included in gross value for federal depletion purposes, there would have been no need whatsoever for Section .010(11)(c). That section was included and must be given account. *See George v. Scent,* Ky., 346 S.W.2d 784 (1961). Under the cabinet's construction, it would be purposeless.

The cabinet offers an assortment of principles pertaining to statutory construction to support its position that transportation expense within the processing chain is not excludable. We are aware of these rules; however, we think the governing rule dispositive of this case is that statutes shall be given normal and reasonable construction. *See George v. Scent,* 346 S.W.2d at 784, 789, wherein the court stated:

The presumption is that the Legislature intends an Act to be effective as an entirety. No rule of statutory construction has been more definitely stated or more often repeated than the cardinal rule that significance and effect shall, if possible, be accorded to every part of the Act. . . . .

Taxing laws should be plain and precise, for they impose a burden upon the people. That imposition should be explicitly and distinctly revealed. If the Legislature fails so to express its intention and meaning, it is the function of the judiciary to construe the statute strictly and resolve doubts and ambiguities in favor of the taxpayer and against the taxing powers. . . . .

For the foregoing reasons, the judgment of the Franklin Circuit Court is affirmed.

All concur.