**REVENUE CABINET, COMMONWEALTH OF KENTUCKY,**
Appellant,

v.

**BROWN BADGETT, INC., Appellee.**

No. 88–SC–00473–DG.

Supreme Court of Kentucky.

June 8, 1989.

**820**

Douglas M. Dowell, Legal Services Section, Frankfort, for appellant.

Paul J. Cox, James A. Nitsche, R. Kenneth Kinderman, Wyatt, Tarrant & Combs, Louisville, for appellee.

LAMBERT, Justice.

This Court granted discretionary review to consider whether five items of expense incurred by appellee Brown Badgett, Inc. were transportation expenses for which an exclusion is allowed in determining the "gross value" of coal, the amount subject to the severance tax imposed by KRS 143.-020. Without benefit of this Court's recent decision in *Tradewater Mining Company v. Revenue Cabinet*, Ky., 753 S.W.2d 551 (1988), and relying on its decision in *Revenue Cabinet v. Pyramid Mining Co.*, Ky. App., 741 S.W.2d 662 (1987), the Court of Appeals allowed appellee to exclude the cost of the five items of expense at issue in this case and disallowed only its claimed exclusion for cost of removal of refuse. As appellee did not cross appeal from the portion of the Court of Appeals decision related to refuse removal, that issue is not before us and will not be addressed here.

For a proper understanding of the issues raised, it is necessary to briefly state the facts. Appellee operated an underground mine and two surface or strip mines. Coal was removed from the underground mine and carried to the surface by conveyor and stockpiled at or near the mine mouth. From there it was loaded by front-end loader onto trucks and transported along a haul road to a wash plant. From the strip mines coal was removed from the seams by shovel and placed directly into trucks which transported it to the wash plant.

At the wash plant the coal was washed, sized, otherwise processed and then stockpiled. From the stockpile it was loaded into highway trucks and taken to a scale house where it was weighed. From the scale house the trucks took the coal along the haul road, then onto a public highway, and finally to a rail loading facility where the coal was loaded onto railroad cars for shipment. Other coal from the stockpile at the mine mouth was taken by truck directly to a barge-loading facility where the weighing took place after the coal had been loaded onto barges.

■ The five items of expense which appellee claims should be excluded from "gross value" in computing the severance tax are as follows:

1. Third party contract hauling expense incurred in transporting coal from the washer to the loading facility;
2. Loaders and shovels used to load coal from the seam or mine mouth onto

trucks, including such expenses as depreciation, repair, maintenance and employee wages and benefits;

3. Expenses paid to third parties for loading coal onto rail or barge transport facilities;

4. Scale expenses including repair, maintenance, depreciation and insurance; and

5. Amounts paid to third parties to weigh barges after the coal is loaded.

The primary statute before us is KRS 143.010(11) which includes in transportation expense, and thus excludes from taxation (a) the amount paid to a third party to transport coal "from the mine mouth or pit to a processing plant, tipple, loading dock or customer ...;" (b) the costs incurred by using the taxpayer's own facilities to transport coal "from the mine mouth or pit to a processing plant, tipple, loading dock or customer;" and (c) costs "incurred in transporting the coal for purpose of marketing." Subsection (d) provides, however, that "In no case shall transportation expenses include the cost of acquisition, improvements, or maintenance of real property; the cost of loading or unloading facilities."

In addition to KRS 143.010(11), set forth above, Section (6) of the Act declares that " 'gross value' is synonymous with gross income from property as defined in Section 613(c) of the Internal Revenue Code ... with the exception that in all instances transportation expenses (whether or not by common carrier) incurred in transporting coal shall not be considered as gross income from the property."

Based on the foregoing statutes, appellee maintains that transportation expenses should be excluded from the amount subject to severance tax if they fall within either of two categories: (1) nonmining transportation expenses which are not included in gross income from property under federal law and thus are not included in gross value pursuant to Section (6) of the Act, or (2) mining transportation expenses under Sections (11)(a) or (11)(b) or marketing costs under Section (11)(c). Revenue, on the other hand, argues for a strict construction of Section (11) and disallowance of any reliance on Section (6) because the argument was not presented to the courts below.

In *Tradewater Mining Company v. Revenue Cabinet*, Ky., 753 S.W.2d 551 (1988), this Court faced the issues presented and adopted the approach urged by appellee. At issue in *Tradewater* was whether the expenses involved in utilizing Tradewater's own barge and dock facility, located twelve miles from its processing plant, were taxable. Revenue argued, and the Court of Appeals agreed, that the costs were taxable because they were excluded from the definition of transportation expense by KRS 143.010(11)(d). This Court reversed. We held that subsection (11), defining transportation expenses, applied only to those transportation expenses classified as mining transportation under federal law; that those expenses classified as nonmining transportation under federal law were never included in gross value to begin with, and were thus nontaxable. We held that KRS 143.010(11)(a) and (b) exclude transportation expenses otherwise includable in gross value because they are mining transportation under federal law, and the purpose of (11)(c) is to codify the nonmining transportation expenses (not subject to federal taxation) set forth in Treasury Regulation § 1.613–3(g)(3). That regulation states that

Transportation the primary purpose of which is marketing, distribution, or delivery for the application of only nonmining processes shall not be considered as mining. Nor shall transportation be considered as mining merely because, during the course of such transportation, some extraneous matter is removed from the ore or mineral by the operation of forces of nature, such as evaporation, drainage, or gravity flow.

Based on all the foregoing this Court in *Tradewater* concluded on pp. at 552 and 553:

KRS 143.010(11)(d) makes it clear that the legislature wanted to maintain loading and unloading costs incidental to mining as processing costs and not to elimi-

nate these costs under its general exemption of transportation costs.

Nevertheless, the Court concluded that the dock facility in question was a nonmining facility under the federal regulation and thus the loading and unloading costs of the facility were nonmining transportation costs under federal law and thus controlled by KRS 143.010(6). It was upon this basis that we concluded at p. 553, "In Kentucky, the loading and unloading of coal incident to the mining process is taxable, but the loading and unloading of coal related to nonmining transportation is not taxable."

The Court of Appeals' decision under review was rendered just prior to this Court's decision in *Tradewater*. The Court of Appeals, therefore, relied upon the authority of its opinion in *Revenue Cabinet v. Pyramid Mining Co.*, Ky.App., 741 S.W.2d 662 (1987), which held that under KRS 143.-010(11) "any movement (transportation) of coal from its source to the customer is excludable," even movement within the processing operation. We believe this construction is too broad.

 Applying the rationale of *Tradewater* to the items at issue in the instant case, it would appear that only item 2, the loader and shovel expense, is includable in the gross value of coal and subject to the severance tax. As previously noted, the shovel is engaged in actually extracting or severing the coal and the loader is used to place the coal in trucks before transportation begins. See KRS 143.010(11)(b). We concluded in *Tradewater*, that the legislature intended to include all loading and unloading costs incident to mining.

Appellant urges a strict construction of the applicable statutory provisions. For instance, it contends the weighing expenses (item 4) are not strictly necessary for the movement of coal, and the weighing information could be used for other purposes, such as calculating royalty payments. While this position is arguable, we believe weighing the trucks for the purpose of calculating hauling charges is so tied to the hauling itself that, to the extent hauling is deductible, the scale expenses should be also. The coal could not be hauled without a method for measuring payment.

As shown herein, KRS 143.010(6) creates a significant relationship between this Act and Section 613(c) of the Internal Revenue Code. Aside from the exemptions set forth in Section (11) of KRS 143.010, a taxpayer should not be entitled to claim an item as a nonmining transportation expense under Kentucky law unless he has shown that such cost was not used to increase his depletion allowance under Section 613(c) of the Internal Revenue Code. To effectuate this rule, in future cases, upon request by the Revenue Cabinet, taxpayers shall be required to furnish their federal income tax returns or other evidence of their treatment of the claimed expense for federal tax purposes.

For the foregoing reasons, the decision of the Court of Appeals is affirmed except that portion relating to the loader and shovel expenses referred to in item 2 herein which is reversed. This cause is remanded to the Franklin Circuit Court for further proceedings.

All concur.